UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EDGAR RODRIGUEZ,

*Plaintiff,*

– against –

UNITED STATES, et al.,

*Defendants.*

**MEMORANDUM & ORDER**
24-cv-02326 (NCM) (JRC)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Edgar Rodriguez was incarcerated at the Metropolitan Detention Center ("MDC") when, according to the allegations in his Second Amended Complaint ("SAC"), he was assaulted by two inmates. The assault caused injuries to Rodriguez's head, hands, arms, and knees and required temporary hospitalization. Rodriguez alleges that the assault was a result of Bureau of Prisons's ("BOP") negligent operation and management of MDC. Further, he alleges that MDC personnel provided grossly inadequate medical care in the aftermath of his assault. Accordingly, Rodriguez brings claims against the United States under the Federal Tort Claims Act ("FTCA") and claims against Dr. Bruce Bialor and Health Service Administrator Stacey Vasquez, employees of the Bureau of Prisons Health Service at MDC, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Before the Court is the United States, Dr. Bialor, and Ms. Vasquez's (collectively "Federal Defendants") motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure.[1] Defendants move to dismiss the SAC in its entirety. For the reasons stated below, defendants' motion is **GRANTED**.

BACKGROUND

Except where otherwise noted, the following facts are taken from the SAC and are assumed true for purposes of this Opinion.

### I.      The March 17, 2021 Attack at MDC

While in custody and housed at MDC, Rodriguez assisted BOP agents with an investigation of illicit activities of certain groups of individuals incarcerated in MDC. SAC ¶ 19. On March 17, 2021, Rodriguez was housed in his unit, in what is commonly known as "general population." SAC ¶ 18, *see* Opp'n 8. That morning, Rodriguez notified his housing unit area counselor that he feared two individuals who had recently been transferred to Unit 72. SAC ¶¶ 20–21. Specifically, Rodriguez thought these individuals might hurt him "as retaliation for the assistance he was providing to BOP investigators." SAC ¶ 20.

Later that day, housing unit Correctional Officers ("COs") searched the cells of the two individuals who were the object of Rodriguez's concern. SAC ¶ 22. Soon thereafter, Rodriguez's fears became reality as the two individuals entered his cell, blocked the door, threatened him, and violently assaulted him. SAC ¶¶ 23–28. During the altercation, one individual—armed with a rope with a padlock attached to the end—hit Rodriguez on the back of the head with the padlock. SAC ¶ 25. As Rodriguez tried to escape, the individuals

---

[1]      The Court hereinafter refers to the Second Amended Complaint, ECF No. 21, as the "SAC"; the Memorandum of Law in Support of Federal Defendants' Motion to Dismiss, ECF No. 31, as the "Motion"; the Opposition to Federal Defendants' Motion to Dismiss, ECF No. 32, as the "Opposition"; and the Reply in Support of Federal Defendants' Motion to Dismiss, ECF No. 33, as the "Reply."

followed him, caught him, and beat him repeatedly with the padlock, hitting his head, hands, and right knee. SAC ¶¶ 26–27. During the beating, one of the individuals also kicked Rodriguez in his right knee. SAC ¶ 28. Finally, other incarcerated individuals housed in the unit intervened and stopped the beating. SAC ¶ 29.

The COs in the unit, however, denied Rodriguez any immediate medical care because the unit was locked down as a result of the attack. SAC ¶ 30. Despite Rodriguez's requests, the COs also refused to notify his counselor of the attack. SAC ¶ 31.

## II.    Subsequent Actions of MDC Staff

The day after the attack, March 18, 2021, Rodriguez was removed from his cell and placed in the Special Housing Unit ("SHU"). SAC ¶ 32. Once in the SHU, Rodriguez did not receive medical treatment for nearly two weeks. *See* SAC ¶¶ 33, 38. Eventually, on March 30, 2021, a nurse gave Rodriguez "ibuprofen . . . to help manage his pain." SAC ¶ 38. At some point while he was in the SHU, a BOP Special Investigative Agent photographed Rodriguez's injuries. SAC ¶ 35.

On April 13, 2021, after Rodriguez's attorney's repeated pleas to the district judge overseeing his criminal case, Rodriguez was evaluated by Dr. Bialor. SAC ¶¶ 39–40. Dr. Bialor observed injuries to Rodriguez's wrist, hand, and fingers, signs of concussion and post-concussion syndrome, and a meniscus tear in his right knee. SAC ¶ 41. Six days later, on April 19, 2021, Rodriguez was taken to Kingsbrook Jewish Medical Center Hospital, where he received X-Rays and an MRI of his head and knee. SAC ¶¶ 42–43. The X-Rays and MRI revealed no fractures to Rodriguez's skull, hands, or knee. SAC ¶ 43. Nonetheless, Rodriguez continued to experience substantial swelling many weeks after the attack, SAC ¶ 43, and pain for over a year after the attack. SAC ¶¶ 49, 61.

After Rodriguez was discharged from the hospital, MDC provided no additional medical care for the injuries he sustained on March 17, 2021. SAC ¶ 44. At Rodriguez's sentencing, District Judge Victor Morrero observed that, "the inadequate response from the [BOP] to [Rodriguez's] injuries" was a relevant factor for determining Rodriguez's sentence. SAC ¶ 50.

Following the assault, Rodriguez timely presented an administrative tort claim to BOP regarding the attack. SAC ¶ 5. On October 18, 2021, BOP confirmed receipt of Rodriguez's administrative tort claim and, on June 9, 2023, BOP mailed a letter, via United States Postal Service ("USPS") Certified Mail, denying Rodriguez's claim. SAC ¶¶ 6, 62. On June 12, 2023, the denial letter arrived in the USPS Regional North Houston, Texas Distribution Center. SAC ¶ 63. On July 18, 2023, the denial was returned to the Federal Bureau of Prisons Office of Regional Counsel as "[u]nclaimed." SAC ¶ 66.

On March 28, 2024, Rodriguez filed a complaint against the United States, alleging BOP was liable under the FTCA because BOP officials failed to protect him from the attack and failed to provide adequate medical treatment following the attack. *See* Compl. ¶¶ 53–61, ECF No. 1. Rodriguez thereafter amended the complaint twice—first to add a *Bivens* deliberate indifference claim against Dr. Bialor, *see* AC, ECF No. 6, and again to add the same against Ms. Vasquez, *see* SAC ¶¶ 9, 14. Federal Defendants then filed the instant motion, seeking to dismiss Rodriguez's FTCA and *Bivens* claims as time-barred or, in the alternative, for lack of subject matter jurisdiction. *See generally* Mot.

4

**LEGAL STANDARD**

## I.      Rule 12(b)(1)

Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[2] "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova,* 201 F.3d at 113).

## II.     Rule 12(b)(6)

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014). Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims."

---

[2]      Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

*Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). At the same time, a plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[C]onclusory allegations [and] legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

## DISCUSSION

### I.    The Discretionary Function Exception

Before reaching the question of whether plaintiff has stated a claim upon which relief can be granted, the Court must first address whether it has subject matter jurisdiction over plaintiff's FTCA claims.

Defendants argue that the Court lacks subject matter jurisdiction over plaintiff's FTCA claims because the discretionary function exception of the FTCA ("DFE") bars any claims related to the adequacy of plaintiff's medical care or the operation and management of MDC. Mot. 15–19. Plaintiff contends that the DFE is not applicable to delayed or denied medical care nor to BOP's violation of "a mandatory policy designed to protect detainees" from risk of violence. Opp'n 14–15, 18–19. Because the Court finds that plaintiff's FTCA claims are time barred and not subject to equitable tolling, *see infra* II, the parties' DFE arguments are addressed only to the extent necessary to demonstrate that the DFE does not completely divest the Court of subject matter jurisdiction.

6

As sovereign, the United States "is immune from suit save as it consents to be sued." *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Moreover, "the terms of [the federal government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* The FTCA is an example of such consent. The statute "allows those injured by federal employees to sue the United States for damages." *Martin v. United States*, 605 U.S. 395, 400 (2025). It does so by "waiving, in 28 U.S.C. § 1346(b), the federal government's sovereign immunity for certain torts committed by federal employees acting within the scope of their employment." *Id.* More specifically, the FTCA "waives the sovereign immunity of the United States for personal injury suits 'caused by the negligent or wrongful act or omission of any employee of the [g]overnment while acting within the scope of his office or employment.'" *Hartman v. Holder*, No. 00-cv-06107, 2009 WL 792185, at *6 (E.D.N.Y. Mar. 23, 2009) (quoting 28 U.S.C. § 1346(b)(1)).

This general waiver, however, "is limited by 13 exceptions to liability, codified in 28 U.S.C. § 2680." *Id.* One such exception—the DFE—provides that "the United States remains immune from suit where a claim is based on 'the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the [g]overnment, whether or not the discretion involved be abused.'" *Id.* (quoting 28 U.S.C. § 2680(a)).

The Supreme Court's decisions in *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531 (1988) and *United States v. Gaubert,* 499 U.S. 315 (1991), "establish the framework for evaluating whether particular governmental conduct falls under the DFE." *Coulthurst v. United States*, 214 F.3d 106, 108–09 (2d Cir. 2000). Under the *Berkovitz-Gaubert* test, the DFE applies only if two conditions are met: "(1) the acts alleged to be

7

negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." *Id.* at 109 (citing *Gaubert*, 499 U.S. at 322–23 and *Berkovitz*, 486 U.S. at 536–37); *see also Maghen v. United States*, No. 19-cv-06464, 2021 WL 4172060, at *2 (E.D.N.Y. Sept. 14, 2021) ("The framework for evaluating whether the DFE bars a claim is known as the two-step *Berkovitz-Gaubert* test.").

Here, were it not time barred, plaintiff's FTCA claim based on BOP's negligence and delay in providing medical treatment would survive Federal Defendants' invocation of the DFE. First, the federal statute that prescribes the BOP's duties states that BOP must "provide for the safekeeping, care and subsistence . . . [and] provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2)–(3). However, as many courts in this Circuit have observed, this statute "does not compel an officer to act in a particular way when supervising inmates or when confronted with inmate-on-inmate violence." *Chen v. United States*, No. 09-cv-02306, 2011 WL 2039433, at *7 (E.D.N.Y. May 24, 2011), *aff'd*, 494 F. App'x 108 (2d Cir. 2012); *see also Russo v. United States*, No. 22-1869-cv, 2024 WL 726884, at *1 (2d Cir. Feb. 22, 2024) (summary order) (noting that under Section 4042(a)(2) "deciding how to address prison safety issues such as . . . inmate-on-inmate threats involves an element of judgment or choice"); *Hartman*, 2009 WL 792185, at *7 (noting that Section 4042(a) did not compel defendant "to act in a particular way when supervising inmates or when confronted with inmate-on-inmate violence"). Accordingly,

8

the way BOP provides care involves an element of judgment or choice, satisfying the first step of the DFE test.

At the second step of the *Berkovitz-Gaubert* test, however, the Court must determine whether BOP's actions were grounded in public policy. This aspect of the DFE analysis focuses on whether the specific action in question involves "choices motivated by considerations of economy, efficiency, and safety." *Coulthurst*, 214 F.3d at 109.

Relevant here, "[t]he Second Circuit has recognized a carve-out to the DFE known as the negligent guard theory." *Searles v. United States*, No. 21-cv-06570, 2022 WL 2829912, at *5 (S.D.N.Y. July 20, 2022). Where the alleged negligence arises from factors such as "inattentiveness, laziness, absentmindedness or other such conduct unrelated to any plausible policy objectives, it is not shielded by the discretionary function exception." *Ben v. United States*, 160 F. Supp. 3d 460, 473 (N.D.N.Y. 2016) (quoting *Coulthurst*, 214 F.3d at 110–11). "At the pleading stage, the Court need not determine the merits of the negligent guard theory . . . or even its capacity to withstand summary judgment[] to allow a claim to proceed." *Oladokun v. United States*, No. 23-cv-05899, 2025 WL 1786913, at *5 (E.D.N.Y. June 26, 2025).

Here, plaintiff alleges that he was repeatedly beaten by two other inmates and that the altercation only ended when other inmates stepped in to stop it. SAC ¶ 26–29. He also alleges that COs were "aware of his medical injuries" but declined to provide medical care because the altercation was apparently so intense that "the unit was locked down as a result." SAC ¶ 30. Plaintiff further alleges that he was not provided medical care until "twelve (12) days after the [attack]," SAC ¶ 38, despite a BOP investigator taking photographs of plaintiff's injuries, including "some photos show[ing] the detail of the

9

padlock's serial number [imprinted] on [p]laintiff's skin." SAC ¶¶ 35–36. Moreover, when plaintiff was finally evaluated—and only after the alleged pleas of his defense attorney to the district judge overseeing his case, *see* SAC ¶ 39—Dr. Bialor observed "injuries to [p]laintiffs []wrist, hand[,] and fingers, . . . signs of concussion and post[-]concussion syndrome, and [] a meniscus tear in his right knee." SAC ¶ 41. And plaintiff was referred to the hospital after Dr. Bialor's evaluation. SAC ¶ 42. Finally, plaintiff alleges that he continued to experience substantial swelling many weeks after the attack, SAC ¶ 43, and pain for over a year after the attack. SAC ¶¶ 49, 61.

Accordingly, there are several questions that would likely need to be resolved before the Court could determine whether BOP officials failed to "respond diligently to an emergency situation out of laziness or inattentiveness." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006). Two such questions would be the precise extent of plaintiff's injuries at the time he was injured and whether officials were aware that the twelve-day delay in treatment had the potential to exacerbate those injuries and the pain associated therewith. See *Oladokun*, 2025 WL 1786913, at *5 (collecting cases denying 12(b)(1) motions based on the DFE where the application of the negligent guard theory turns on questions of fact). Therefore, were it timely, plaintiff's FTCA claim based on the failure of BOP officials to provide prompt and adequate medical care would not be defeated by the DFE at this stage of the case.

## II.    Timeliness of Plaintiff's FTCA Claims

In the alternative, the government argues plaintiff's FTCA claims are time-barred because the initial complaint was filed "well beyond the statutory six-month period." Mot. 8. Plaintiff advances two arguments in opposition.

First, plaintiff does not dispute that the government sent the denial letter, nor that the denial letter was sent via USPS Certified mail. SAC ¶ 62; Opp'n 18–19. Rather, he contends that because he did not "receive[] the denial letter" and because the government was "on notice that [he did not receive] the [denial] letter" when it was returned "with the return mail receipt still affixed," the "government had a duty to resend the letter." Opp'n 19–20. Plaintiff argues that the fact that the government did not resend the letter means they never really denied his claim at all. *See* Opp'n 22 ("The United States knew there was no chance the denial actually reached [p]laintiff and, when the letter was returned to them with the return receipt still affixed, they were on notice of nonreceipt. This makes the denial ineffective.").

Second, plaintiff contends that even if the United States did deny his claim by sending the denial letter, the Court should permit his claim under the doctrine of equitable tolling. Opp'n 22–25. The Court addresses each argument in turn.

Under the FTCA, a claim is time-barred unless an "action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). "The burden is on the plaintiff to both plead and prove compliance with the FTCA's statutory requirements." *Davis v. Goldstein*, 563 F. App'x 800, 802 (2d Cir. 2014) (summary order) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)). A federal agency's denial of an administrative tort claim is effective when the agency mails the denial letter via certified mail. *See* 28 U.S.C.A. § 2401(b). If the denial letter is properly mailed, "actual receipt is irrelevant." *Hickman v. Bellevue Hosp. Ctr.*, No. 21-cv-01738, 2024 WL 2112127, at *8 (E.D.N.Y. Jan. 5, 2024), *report and recommendation adopted*,

2024 WL 1756451 (E.D.N.Y. Apr. 24, 2024); *see Davis* 563 F. App'x at 802 ("Actual receipt of the notice is not required by the statute.").

Applying these principles to the facts of this case, the limitations period for Rodriguez's FTCA claims began on June 9, 2023, when BOP mailed the denial letter. SAC ¶ 62; *see* Mot., Ex. B ECF 31-3.[3] That plaintiff denies ever receiving the letter "does not save [his] claim." *Mortillaro v. United States*, No. 21-cv-00852, 2024 WL 328837, at *4 (E.D.N.Y. Jan. 29, 2024). The entire point of the statutory requirement that agencies send denial letters via certified mail is to "establish[] with certainty" the "all-important date of mailing" because "[e]ven an otherwise meritorious claim is presumptively barred if filed six months and one day after the date of mailing of the denial notice." *Hickman,* 2024 WL 2112127, at *8. Here, it is undisputed that BOP mailed the denial letter via certified mail. SAC ¶ 62. Therefore, contrary to plaintiff's argument, this is not a case in which the government is trying to improperly "invoke the FTCA statute of limitations to shield itself," Opp'n 24–25, because it did not "fail[] to send the denial of plaintiff's claim to him by certified or registered mail." *Hickman*, 2024 WL 2112127, at *8 (denying motion to dismiss because "the [g]overnment did not live up to its statutory obligation under the FTCA when it *failed to send* the denial of plaintiff's claim to him by certified or registered mail") (emphasis added). Accordingly, plaintiff had until December 11, 2023, to file his

---

3    The Court will consider the exhibits attached to the Motion, Opposition, and Reply given that they are referenced throughout the SAC. *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 n.1 (2d Cir. 2024) ("On a motion to dismiss, a court may consider extrinsic materials if they are integral to the complaint or an appropriate subject for judicial notice.").

FTCA claims.[4] Plaintiff filed his original complaint well past that deadline on March 28, 2024. *See* Compl. Therefore, plaintiff's FTCA claims are only timely if the deadline is equitably tolled.

28 U.S.C. § 2401's time limits are non-jurisdictional and may be subject to equitable tolling. *See United States v. Wong*, 575 U.S. 402, 412 (2015) ("The time limits in the FTCA are just time limits, . . . . [and] a court can toll them on equitable grounds."). While equitable tolling allows courts to extend a statute of limitations "on a case-by-case basis to prevent inequity," a court's discretion "is not absolute." *Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023). A plaintiff seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011). "The law prohibits a judge from exercising her discretion where these two elements are missing." *Doe*, 76 F.4th at 71.

Plaintiff argues that equitable tolling should apply here because "the USPS made a mistake." Opp'n 22. First, plaintiff asserts that USPS's failure to deliver, or even attempt delivery of the denial letter constitutes an extraordinary circumstance. Opp'n 23. Due to this "lack of notice," plaintiff contends, he "believed that the government was still evaluating his claim." Opp'n 24.

Next, plaintiff contends that he "exercised due diligence in pursuing and preserving his claim by meeting every deadline during the administrative process" and by "hiring attorneys and filing a timely Form 95 after his release from custody." Opp'n 24.

---

[4]     Six months from June 9, 2023, fell on a Saturday. Accordingly, plaintiff's complaint would have been timely if filed the following Monday. *See* Fed. R. Civ. P. 6.

Finally, plaintiff states that equity weighs in favor of equitable tolling because the government "should not be permitted to profit from its own wrongdoing." Opp'n 24. At bottom, plaintiff says, it would be unfair to allow the government to shield itself from liability based on the error of its own agency. Opp'n 24.

For its part, the government contends that "lost mail" is not an extraordinary circumstance. Mot. 11–13. And even if lost mail could constitute such a circumstance, the government argues there is no causal connection between plaintiff's lost mail and the untimely filing his lawsuit. Mot. 13–14. That is, the circumstance did not "st[and] in his way" as evidenced by the fact that plaintiff filed the instant lawsuit without ever having received the denial letter. Mot. 14. Most importantly, however, the government insists that plaintiff has not established his entitlement to equitable tolling due to the "inexplicabl[e] delay[] [in] commencing th[e] lawsuit." Mot. 9. In other words, the government faults plaintiff for a lack of diligence. The government points to 28 U.S.C. § 2675(a), which allows a claimant to deem an administrative claim denied, and subsequently file suit, if the agency "fail[s] . . . to make final disposition of a claim within six months after it is filed." 28 U.S.C. § 2675(a). The government argues that if plaintiff was truly diligent, he would not have waited two and a half years after he filed his claim to file his lawsuit. Mot. 11.

Even assuming *arguendo* that the non-receipt of mail may, in some cases, constitute an extraordinary circumstance sufficient to satisfy one element of equitable tolling, *see Diaz v. Kelly*, 515 F.3d 149, 155 (2d Cir. 2008) ("[P]rolonged delay by a state court in sending notice of a ruling that completes exhaustion of state court remedies can toll the AEDPA limitations period."); *but see Burke v. United States Postal Serv.*,

14

No. 19-cv-02539, 2020 WL 9816003, at *7 (E.D.N.Y. Sept. 28, 2020) (collecting cases and explaining that "nonreceipt of a properly addressed claim denial letter is not, by itself, an extraordinary circumstance that warrants equitable tolling"), plaintiff here did not demonstrate the level of diligence equity requires. And because equitable tolling's two components are "elements, not merely factors of indeterminate or commensurable weight," *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 256 (2016), plaintiff's failure on this point is fatal. Accordingly, he is not entitled to equitable tolling.[5]

Plaintiff claims that he acted with the requisite level of diligence by "hiring attorneys" and complying with deadlines "during the administrative claim process." Opp'n 24. But those actions do not demonstrate diligence "throughout the period he seeks to toll" as is required under the diligence prong of the equitable tolling analysis. *Michel v. United States*, No. 17-cv-01893, 2019 WL 4602828, at *3 (E.D.N.Y. Sept. 23, 2019).

First, plaintiff's diligence throughout the administrative process is irrelevant to his diligence after that point. *Hood v. Cath. Health Sys., Inc.*, No. 20-cv-00673, 2020 WL 8371205, at *6 (W.D.N.Y. Sept. 28, 2020) ("It is true that . . . [plaintiff] was diligent at earlier stages of the process. [She] filed a timely administrative claim with HHS. She also timely requested reconsideration and simultaneously filed suit in state court . . . . But the court must focus on whether [p]laintiff acted with reasonable diligence *during the period*

---

[5]     Nor has plaintiff demonstrated that the fact that he did not receive the denial letter prevented him from timely filing his complaint given that he was on notice that BOP "ha[d] six months from the date of receipt" of his claim to adjudicate it. Opp'n Ex. 1 at 1–2, ECF No. 32-1. "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances; he must further demonstrate that those circumstances caused him to miss the original filing deadline." *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021).

*she seeks to toll.*"). The FTCA sets forth two distinct time limitations. "[A] plaintiff must present a tort claim in writing to the appropriate Federal agency within two years after such claim accrues . . . . [and] must thereafter challenge the agency's final denial in a federal district court by filing an action within six months of the date of the mailing of the notice of final denial by the agency." *Carelock v. United States*, No. 14-cv-03594, 2015 WL 5000816, at *5 (S.D.N.Y. Aug. 20, 2015) (citing 28 U.S.C. § 2401(b)). It is undisputed that plaintiff complied with the first of these limitations periods. But that does not bear on his diligence in complying with the second. *Burke*, 2020 WL 9816003, at *6 ("Although Plaintiff was diligent in presenting her claim to [the relevant agency] . . . a month after it accrued, she has not shown that she acted with reasonable diligence throughout the period she seeks to toll, which is the seven-month period from the expiration of the six-month statute of limitations . . . ."). On the contrary, plaintiff's "radio silen[ce]" for over two years after he filed his claim undermines any inference of diligence. *Hunter v. United States Postal Serv.*, No. 19-cv-02572, 2020 WL 804946, at *2 (E.D.N.Y. Feb. 18, 2020) ("[E]quitable tolling is inconsistent with . . . waiting for that long a time."); *see also Palmer-Williams v. United States*, No. 14-cv-09260, 2016 WL 676465, at *8, 8 n.10 (S.D.N.Y. Feb. 18, 2016), *aff'd*, 675 F. App'x 70 (2d Cir. 2017) (declining to equitably toll limitations period where plaintiff "cut[] it too close" by mailing a letter requesting reconsideration of her claim on November 10, when the letter was due November 14, observing that "[p]laintiff failed to act with reasonable diligence by waiting . . . to mail the request").[6]

---

[6] Courts find diligence where a plaintiff follows up on their claim. Here, defendant does not allege that he "continued to communicate with [BOP] . . . about his concerns"

Second, plaintiff's argument that he "hir[ed] attorneys," Opp'n 24, who "were actively engaged in a pre-suit investigation," SAC ¶ 72, does not help, and may undermine his claim of diligence. It at least begs the question of why those attorneys did not attempt to learn the status of his claim or file the instant suit sooner. Indeed, "no extraordinary obstacle prevented the [plaintiff's counsel] from identifying . . . the particular requirements for filing suit under the FTCA[] in a timely way." *A.Q.C.*, 656 F.3d at 145. Having "neglected to take that simple step, [plaintiff's counsel] cannot now argue that [plaintiff] diligently pursued [his] claim." *Id.* Accordingly, plaintiff has failed to demonstrate diligence in pursuing his claim during the period he seeks to toll, and equitable tolling is inappropriate.

## III.   Timeliness of Plaintiff's *Bivens* Claims

Federal Defendants assert plaintiff's *Bivens* claims are time barred because they were first added in the AC—which was filed after the three-year limitations period—and

---

when he received no response to his administrative claim. *Saofaigaalii v. United States*, No. 14-00455, 2016 WL 3527095, at *15 (D. Haw. June 23, 2016). And plaintiff alleges no "fear" or "psychological impact" that "prevented [him] from being able to begin seeking redress" once the six-month period for BOP to respond had elapsed. *Doe*, 76 F.4th at 73. Further, this is not a case in which plaintiff missed the filing deadline because the government "made a misrepresentation" about the limitations period. *Gagliano v. United States*, 810 F. Supp. 3d 369, 375 (E.D.N.Y. 2025). Plaintiff's claim of reasonable diligence is unsupported by a single allegation that he followed up on his administrative tort claim despite his apparent knowledge that BOP had six months to respond. See Opp'n Ex. 1 at 3 ("I just received the tort claim I put in[,] it says that they have 6 months . . . to give me a respons[e] . . . they received this letter September 24, 2021 so [I']m guessing it[']s six months from that date."); *see also Holland v. Fla.*, 560 U.S. 631, 653 (2010) (finding reasonable diligence where litigant "wrote his attorney numerous letters seeking crucial information and providing direction . . .[,] contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have [his nonresponsive attorney] . . . removed from his case[,]" and, upon discovering that the limitations period had elapsed, "prepared his own habeas petition *pro se* and promptly filed it with the [d]istrict [c]ourt.").

17

cannot relate back to the originally filed complaint given that it too was untimely. Mot. 19. Plaintiff does not respond to this argument.[7]

The statute of limitations for *Bivens* actions arising in New York is three years. *Tapia-Ortiz v. Doe*, 171 F.3d 150, 151 (2d Cir. 1999). A *Bivens* claim accrues and the limitations period begins "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Petrucelli v. Hasty*, 605 F. Supp. 2d 410, 418 (E.D.N.Y. 2009). Here, plaintiff knew or had reason to know of any alleged deliberate indifference by defendants by May 2021 at the latest. *See* SAC ¶¶ 38–39, 44. Yet the first time plaintiff asserted *Bivens* claims was in the AC, filed over three years later, on October 9, 2024. Accordingly, plaintiff's Bivens claims are untimely.

Trying to avoid this conclusion, plaintiff argues that his *Bivens* claims should survive under both the continuous violation doctrine and continuous treatment doctrine. Opp'n 25. Both arguments are without merit. At the outset, plaintiff identifies no authority for the proposition that the continuous treatment doctrine applies in the *Bivens* context. *Todd v. Zenk*, No. 08-cv-03116, 2009 WL 1230563, at *2 (E.D.N.Y. May 4, 2009) ("[T]he relevant state law analog for a *Bivens* action is personal injury, not medical malpractice, and thus the continuing medical treatment doctrine does not apply.").[8]

---

[7]    Federal Defendants are correct on this point. *See Nkansah v. United States*, No. 18-cv-10230, 2021 WL 5493214, at *3 (S.D.N.Y. Nov. 23, 2021) (collecting cases and observing that a party "can only amend his complaint if his original complaint was filed before the statute of limitations expired"). In any case, plaintiff asserts no argument concerning the relation back doctrine, so the Court considers any such argument waived. *Gordon v. Suffolk Cnty.,* No. 21-cv-01653, 2022 WL 17585706, at *3 (E.D.N.Y. Dec. 9, 2022).

[8]    Moreover, the caselaw the Court has identified in the Section 1983 context suggests that it would be inappropriate to apply the continuous treatment doctrine to this case. *See*

Under the continuous treatment doctrine, "where the plaintiff is in the continuing care of the negligent actor for the same injury out of which the *FTCA cause of action* arose, the statute of limitations may be tolled under certain circumstances until the end of the course of treatment." *Carroll v. United States*, No. 23-7479-cv, 2025 WL 1201869, at *1 (2d Cir. Apr. 25, 2025) (summary order) (emphasis added).

Even assuming that the continuous treatment doctrine could apply to a *Bivens* claim, plaintiff has not pled facts sufficient to support the conclusion that it would be appropriate here. While plaintiff alleges that he was "under continuous treatment of [d]efendants for the entire period of his incarceration through January 2023," SAC ¶ 48, he also concedes that "[o]nce discharged [from Kingsbrook Jewish Medical Center Hospital], [he] was returned to MDC where he *did not receive any medical care for the injuries sustained during the March 17, 2021 incident,*" SAC ¶ 44 (emphasis added). In the absence of additional allegations describing a "sequence of events" suggesting he was "continuously treated" throughout the entire of period of his incarceration, *Carroll*, 2025 WL 1201869, at*2, it is unclear how the continuous treatment doctrine would apply to plaintiff's claim.

---

*Inesti v. Hogan*, No. 11-cv-02596, 2013 WL 791540, at *10 n.18 (S.D.N.Y. Mar. 5, 2013), *report and recommendation adopted*, 2013 WL 5677046 (Sept. 30, 2013) ("[T]he continuous treatment toll applies to medical malpractice claims, not § 1983 claims."); *Cole v. Miraflor,* 99-cv-00977, 2001 WL 138765 at *5 (S.D.N.Y. Feb. 19, 2001) (The "continuous treatment doctrine cannot apply to a § 1983 deliberate indifference claim because, first, courts have carefully distinguished deliberate indifference from medical malpractice, and, second, the Supreme Court has stated that the statute of limitations provisions of personal injury actions shall apply to all section 1983 cases."); *West v. City of N.Y.,* 88-cv-01801, 1992 WL 249966 at *5 (S.D.N.Y. Sept. 22, 1992) ("While a medical malpractice action may share characteristics with a section 1983 action for deliberate indifference to medical needs, the continuing treatment doctrine does not apply here . . . .").

Second, plaintiff cannot invoke the continuous violation doctrine because he has failed to allege the existence of an "ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Here, plaintiff alleges that Dr. Bialor and Ms. Vasquez were "aware of [his] injuries resulting from the incident" and the "extreme, unnecessary[,] and wanton infliction of pain" caused by those injuries. SAC ¶ 34, 47. Those allegations are insufficient to support an inference that Dr. Bialor and Ms. Vasquez had a policy of deliberate indifference to plaintiff's medical needs.

Similarly, the SAC is devoid of any allegations of non-time-barred acts taken in furtherance of Dr. Bialor and Ms. Vasquez's alleged policy of deliberate indifference. *See* SAC ¶ 44 ("Once discharged, [p]laintiff was returned to MDC where he did not receive any medical care for the injuries sustained during the March 17, 2021 incident."); *see also Shomo*, 579 F.3d at 184 ("There is no allegation that [defendant] ignored a medical recommendation nor any indication that [plaintiff] had further contact with [defendant] [within the limitations period]. Accordingly, the claim was properly dismissed . . . ."). Therefore, neither the continuous treatment nor continuous violation doctrine apply to plaintiff's *Bivens* claims, and the claims are untimely.

\* \* \*

In sum, the Court finds no appropriate reason to toll the limitations periods for plaintiff's claims, which have unquestionably lapsed. Accordingly, Federal Defendants' motion to dismiss the SAC is granted.[9]

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is **GRANTED.**

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　 /s/ *Natasha C. Merle*　　
　　　　　　　　　　　　　　　　　　　　　　NATASHA C. MERLE
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated:　　　　July 10, 2026
　　　　　　　Brooklyn, New York

---

[9] Plaintiff also asserts *Bivens* claims against John Doe BOP officers who are not the subject of the Federal Defendants' Motion. *See* SAC ¶¶ 82–100; Mot. 7 n.1. Because those claims were not added until the AC, they too are time-barred. Accordingly, the Court dismisses those claims sua sponte. *Choi v. 37 Parsons Realty LLC*, 642 F. Supp. 3d 329, 335 (E.D.N.Y. 2022) (collecting cases and observing that "a district court has the ability sua sponte to dismiss a complaint if the allegations lack a basis in law or fact").